IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action **No. 1:12-cv-1123-JLK**

**WILLIAM NEWLAND**;
**PAUL NEWLAND**;
**JAMES NEWLAND**;
**CHRISTINE KETTERHAGEN**;
**ANDREW NEWLAND**; and
**HERCULES INDUSTRIES, INC.**, a Colorado corporation;

    Plaintiffs,

v.

**KATHLEEN SEBELIUS**, in her official capacity as Secretary of the United States Department of Health and Human Services;
**HILDA SOLIS**, in her official capacity as Secretary of the United States Department of Labor;
**TIMOTHY GEITHNER**, in his official capacity as Secretary of the United States Department of the Treasury;
**UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES**;
**UNITED STATES DEPARTMENT OF LABOR**;
**UNITED STATED DEPARTMENT OF THE TREASURY**;

    Defendants.

---

## ORDER

Kane, J.

    This matter is currently before me on Plaintiffs' Motion for Preliminary Injunction (doc. 5).  Based on the forthcoming discussion, Plaintiffs' motion is GRANTED.

## BACKGROUND

*The Patient Protection and Affordable Care Act*

    Signed into law on March 23, 2010, the Patient Protection and Affordable Care Act ("ACA"), Pub. L. No. 111-148, 124 Stat. 119 (2010), instituted a variety of healthcare reforms.

1

Among its many provisions, it requires most U.S. citizens and legal residents to have health insurance, creates state-based health insurance exchanges, and requires employers with fifty or more full-time employees to offer health insurance.[1]  *Id*.  The ACA also implemented a series of provisions aimed at insuring minimum levels of health care coverage.[2]  Most relevant to the instant suit, the ACA requires group health plans to provide no-cost coverage for preventive care and screening for women.  42 U.S.C. § 300gg-13(a)(4).[3]

Unlike some other provisions of the ACA, however, the preventive care coverage mandate does not apply to certain healthcare plans existing on March 23, 2010.[4]  *See* Interim

---

[1] In a recent decision, the Supreme Court upheld the constitutionality of the so-called individual mandate, but invalidated the portion of the Affordable Care Act threatening loss of existing Medicaid funding if a state declines to expand its Medicaid programs.  *Nat'l Fed'n of Indep. Bus. v. Sebelius*, __ U.S. __; 183 L. Ed. 2d 450 (June 28, 2012).

[2] Termed the "Patient's Bill of Rights" these provisions require health plans to: provide coverage to persons with pre-existing conditions, protect a patient's choice of doctors, allow adults under the age of twenty-six to maintain coverage under their parent's health plan, prohibit annual and lifetime limits on most healthcare benefits, and end pre-existing condition exclusions for children under the age of nineteen.  *See* Patient's Bill of Rights *available at* http://www.healthcare.gov/law/features/rights/bill-of-rights/index.html (last viewed on July 27, 2012).  As discussed *infra* at n.4, not all health plans are required to meet these conditions.

[3] The ACA did not, however, specifically delimit the contours of preventive care.  Instead, it delegated that responsibility to the Health Resources and Services Administration ("HRSA").  On August 1, 2011, HRSA adopted Required Health Plan Coverage Guidelines that defined the scope of women's preventive services for purposes of the ACA coverage mandate.  *See* HRSA, Women's Preventive Services: Required Health Plan Coverage Guidelines *available at* http://www.hrsa.gov/womensguidelines/ (last visited July 27, 2012).  The HRSA guidelines include, among other things, "the full range of Food and Drug Administration-approved contraceptive methods, sterilization procedures, and patient education and counseling for women with reproductive capacity."  *Id.*

[4] Numerous provisions of the ACA apply to grandfathered health plans:  the prohibition on pre-existing condition exclusions (group health plans only), the prohibition on excessive waiting periods (both group and individual health plans), the prohibition on lifetime (both) and annual (group only) benefit limits, the prohibition on rescissions (both), and the extension of dependent care coverage (both) to name a few.  75 Fed. Reg. at 34542.  For a comprehensive

Final Rules for Group Health Plans and Health Insurance Coverage Relating to Status as a Grandfathered Health Plan Under the Patient Protection and Affordable Care Act, 75 Fed. Reg. 34538,34540 (June 17, 2010). This gap in the preventive care coverage mandate is significant. According to government estimates, 191 million Americans belong to plans which may be grandfathered under the ACA. *Id.* at 34550. Although there are many requirements for maintaining grandfathered status, *see* 26 C.F.R. § 54.9815-1251T(g), if those requirements are met a plan may be grandfathered for an indefinite period of time.

In addition to grandfathering under the ACA, the preventive care guidelines exempt certain religious employers from any requirement to cover contraceptive services.[5] *See* Interim Final Rules for Group Health Plans and Health Insurance Issuers Relating to Coverage of Preventive Services Under the Patient Protection and Affordable Care Act, 76 Fed. Reg. 46621 (Aug. 3, 2011). The guidelines also contain a temporary enforcement "safe-harbor" for plans sponsored by certain non-profit organizations with religious objections to contraceptive coverage

---

summary of the applicability of ACA provisions to grandfathered health plans, see Application of the New Health Reform Provisions of Part A of Title XXVII of the PHS Act to Grandfathered Plans, *available at* http://www.dol.gov/ebsa/pdf/grandfatherregtable.pdf. (last visited July 26, 2012).

[5] In order to qualify as a "religious employer" eligible for this exemption, an employer must meet the following criteria:
  (1) The inculcation of religious values is the purpose of the organization.
  (2) The organization primarily employs persons who share the religious tenets of the organization.
  (3) The organization serves primarily persons who share the religious tenets of the organization.
  (4) The organization is a non-profit organization as described in section 6033(a)(1) and section 6033(a)(3)(A)(i) or (iii) of the Internal Revenue Code of 1986, as amended.

76 Fed. Reg. 46621, 46626 (Aug. 3, 2011); *See* 77 Fed. Reg. 8725 (Feb. 15, 2012).

that do not qualify for the religious employer exemption. *See* Final Rules for Group Health Plans and Health Insurance Issuers Relating to Coverage of Preventive Services Under the Patient Protection and Affordable Care Act 77 Fed. Reg. 8725, 8726-8727 (Feb. 15, 2012). The preventive care guidelines take effect on August 1, 2012.

*Hercules Industries, Inc.*

Plaintiff Hercules Industries, Inc. is a Colorado s-corp engaged in the manufacture and distribution of heating, ventilation, and air conditioning ("HVAC") products and equipment. Hercules is owned by siblings William, Paul and James Newland and Christine Ketterhagen, who also comprise the company's Board of Directors. Additionally, William Newland serves as President of the company and his son, Andrew Newland serves as Vice President.[6]

Although Hercules is a for-profit, secular employer, the Newlands adhere to the Catholic denomination of the Christian faith. According to the Newlands, "they seek to run Hercules in a manner that reflects their sincerely held religious beliefs" Amended Complaint (doc. 19) at ¶ 2. Thus, for the past year and a half the Newlands have implemented within Hercules a program designed to build their corporate culture based on Catholic principles. *Id*. at ¶ 36. Hercules recently made two amendments to its articles of incorporation, which reflect the role of religion in its corporate governance: (1) it added a provision specifying that its primary purposes are to be achieved by "following appropriate religious, ethical or moral standards," and (2) it added a provision allowing members of its board of directors to prioritize those "religious, ethical or moral standards" at the expense of profitability. *Id*. at ¶ 112. Furthermore, Hercules has donated

---

[6] Throughout this opinion, I will refer to William Newland, Paul Newland, James Newland, Christine Ketterhagen, and Andrew Newland as the "Newlands."

significant amounts of money to Catholic organizations and causes. *Id*. at ¶ 35.

According to Plaintiffs, Hercules maintains a self-insured group plan for its employees "[a]s part of fulfilling their organizational mission and Catholic beliefs and commitments." *Id.* at ¶¶ 37. Significantly, because the Catholic church condemns the use of contraception, Hercules self-insured plan does not cover abortifacent drugs, contraception, or sterilization. *Id*. at ¶ 41.

Hercules' health insurance plan is not "grandfathered" under the ACA. Furthermore, notwithstanding the Newlands' religious beliefs, as a secular, for-profit corporation, Hercules does not qualify as a "religious employer" within the meaning of the preventive care regulations. Nor may it seek refuge in the enforcement "safe harbor." Accordingly, Hercules will be required to either include no-cost coverage for contraception in its group health plan or face monetary penalties. Faced with a choice between complying with the ACA or complying with their religious beliefs, Plaintiffs filed the instant suit challenging the women's preventive care coverage mandate as violative of RFRA, the First Amendment, the Fifth Amendment, and the Administrative Procedure Act.

Believing the alleged injury to their constitutional and statutory rights to be imminent, Plaintiffs filed the instant Motion for Preliminary Injunction.

### DISCUSSION

A preliminary injunction is an extraordinary remedy; accordingly, the right to relief must be clear and unequivocal. *See, e.g.*, *Flood v. ClearOne Commc'ns, Inc.*, 618 F.3d 1110, 1117 (10th Cir. 2010). To meet this burden, a party seeking a preliminary injunction must show: (1) a likelihood of success on the merits, (2) a threat of irreparable harm, which (3) outweighs any harm to the non-moving party, and that (4) the injunction would not adversely affect the public

interest. *See, e.g.*, *Awad v. Ziriax*, 670 F.3d 1111, 1125 (10th Cir. 2012). Although this inquiry is, on its face, relatively straightforward, there are a variety of exceptions. If the injunction will (1) alter the status quo, (2) mandate action by the defendant, or (3) afford the movant all the relief that it could recover at the conclusion of a full trial on the merits, the movant must meet a heightened burden. *See O Centro Espirita Beneficente Uniao do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (en banc), aff'd and remanded, *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006).

In determining whether an injunction falls into one of these "disfavored" categories, courts often focus on whether the requested injunctive relief will alter the status quo. The "status quo" is "the last uncontested status between the parties which preceded the controversy until the outcome of the final hearing." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 269 F.3d 1149, 1155 (10th Cir. 2001). In making this determination, however, I must look beyond the parties' legal rights, focusing instead on the reality of the existing status and relationship between the parties. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1260 (10th Cir. 2005). If the requested relief would either preserve or restore the relationship and status existing ante bellum, the injunction does not alter the status quo.

This determination is not, however, necessarily dispositive. An injunction restoring the status quo ante bellum may require action on behalf of the nonmovant. Such an injunction, one which "affirmatively require[s] the nonmovant to act in a particular way," is mandatory and disfavored. *Id.* at 1261.

Although I follow the Tenth Circuit's guidance in determining whether Plaintiffs seek to disturb the status quo or require affirmative action by Defendants, I am careful to avoid

uncritical adherence to the "status quo-formula" and the "mandatory/prohibitory formulation." In making this determination, I must be mindful of "the fundamental purpose of preliminary injunctive relief under our Rules of Civil Procedure, which is 'to preserve the relative positions of the parties until a trial on the merits can be held.'" *Bray v. QFA Royalties, LLC*, 486 F. Supp. 2d 1237, 1243-44 (D. Colo. 2007) (citing *O Centro*, 389 F.3d at 999-1001 (Seymour, C.J., concurring)).

Before the instigation of this lawsuit, Plaintiffs maintained an employee insurance plan that excluded contraceptive coverage. Although Defendants have passed a regulation requiring Plaintiffs to include such coverage in their coverage for the plan-year beginning on November 1, 2012, that regulation, as it applies to Plaintiffs, has not yet taken effect. Should the requested injunction enter, Defendants will be enjoined from enforcing the preventive care coverage mandate against Plaintiffs pending the outcome of this suit. The status quo will be preserved, and Defendants will not be required to take any affirmative action.

Because Plaintiffs do not seek a "disfavored" injunction, I must consider whether Plaintiffs are entitled to rely on an altered burden of proof. *Cf. O Centro*, 389 F.3d at 976. If the equities tip strongly in their favor, Plaintiffs "may meet the requirement for showing success on the merits by showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation."[7]

---

[7] Although some courts in this district have questioned the continued validity of this relaxed likelihood-of-success-on-the-merits standard in light of the Supreme Court's decision in *Winter v. Natural Resource Defense Council, Inc.*, 555 U.S. 7, 20 (2008) (holding that a plaintiff seeking a preliminary injunction "must establish that he is likely to succeed on the merits"), because the Tenth Circuit has continued to refer to this relaxed standard I assume it still governs the issuance of preliminary injunctions in this circuit. *See RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1209 n.3 (10th Cir. 2009).

*Okla. ex rel. Okla. Tax Comm'n v. Int'l Registration Plan, Inc.*, 455 F.3d 1107, 1113 (10th Cir. 2006).

Accordingly, I begin by considering the equities before turning to Plaintiffs' likelihood of success on the merits.

### 1. Irreparable Harm

Although it is well-established that the potential violation of Plaintiffs' constitutional and RFRA rights threatens irreparable harm, *see Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001), Plaintiffs must also establish that "the injury complained of is of such <u>imminence</u> that there is a clear and present need for equitable relief to prevent irreparable harm." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (emphasis in original). Imminence does not, however, require immediacy. Plaintiffs need only demonstrate that absent a preliminary injunction, "[they] are likely to suffer irreparable harm before a decision on the merits can be rendered." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948.1, p. 139 (2d ed. 1995)).

Absent injunctive relief, Plaintiffs will be required to provide FDA-approved contraceptive methods, sterilization procedures, and patient education and counseling for women with reproductive capacity as part of their employee insurance plan. Per the terms of the preventive care coverage mandate, that coverage must begin on the start date of the first plan year following the effective date of the regulations, November 1, 2012. Defendants argue this harm, three months in the future, is not sufficiently imminent to justify injunctive relief. In light of the extensive planning involved in preparing and providing its employee insurance plan, and

the uncertainty that this matter will be resolved before the coverage effective date, Plaintiffs have adequately established that they will suffer imminent irreparable harm absent injunctive relief. This factor strongly favors entry of injunctive relief.

### 2. Balancing of Harms

I must next weigh the irreparable harm faced by Plaintiffs against the harm to Defendants should an injunction enter.   Should an injunction enter, Defendants will be prevented from "enforcing regulations that Congress found it in the public interest to direct that agency to develop and enforce." *Cornish v. Dudas*, 540 F. Supp. 2d 61, 61 (D.D.C. 2008).

This harm pales in comparison to the possible infringement upon Plaintiffs' constitutional and statutory rights. This factor strongly favors entry of injunctive relief.

### 3. Public Interest

Defendants argue that entry of the requested injunction is contrary to the public interest, because it would "undermine [their] ability to effectuate Congress's goals of improving the health of women and children and equalizing the coverage of preventive services for women and men so that women who choose to do so can be part of the workforce on an equal playing field with men." Defendants' Response (doc. 26) at73.  This asserted interest is, however, undermined by the creation of exemptions for certain religious organizations and employers with grandfathered health insurance plans and a temporary enforcement safe harbor for non-profit organizations.

These interests are countered, and indeed outweighed, by the public interest in the free exercise of religion. As the Tenth Circuit has noted, "there is a strong public interest in the free

exercise of religion even where that interest may conflict with [another statutory scheme]." *O Centro*, 389 F.3d at 1010. Accordingly, the public interest favors entry of an injunction in this case.

On balance, the threatened harm to Plaintiffs, impingement of their right to freely exercise their religious beliefs, and the concommittant public interest in that right srongly favor the entry of injunctive relief. Although the less rigorous standard for preliminary injunctions is not applied when "a preliminary injunction seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme," *Aid for Women v. Foulston*, 441 F.3d 1101, 1115 (10th Cir. 2006), the government's creation of numerous exceptions to the preventive care coverage mandate has undermined its alleged public interest.[8] Accordingly, I find the general rule disfavoring the relaxed standard inapplicable. Plaintiffs need only establish that their challenge presents "questions going to the merits . . . so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation." *Okla. Tax Comm'n*, 455 F.3d at 1113.

### 4. Likelihood of Success on the Merits

Plaintiffs raise a variety of constitutional and statutory challenges. Because Plaintiffs' RFRA challenge provides adequate grounds for the requested injunctive relief, I decline to address their challenges under the Free Exercise, Establishment and Freedom of Speech Clauses of the First Amendment. *See, e.g.*, *United States v. Hardeman*, 297 F.3d 1116, 1135-36 (10th Cir. 2002) (en banc).

---

[8] *See* discussion *supra* at pp. 2-4 and *infra* at p. 14-15.

Passed in 1993, the Religious Freedom Restoration Act ("RFRA") sought to "restore the compelling interest test as set forth in *Sherbert v. Verner*, 374 U.S. 398 (1963) and *Wisconsin v. Yoder*, 406 U.S. 205 (1972) and to guarantee its application in all cases where free exercise of religion is substantially burdened." 42 U.S.C. § 2000bb(b). Although unconstitutional as applied to the states, *see City of Boerne v. Flores*, 521 U.S. 507 (1997), it remains constitutional as applied to the federal government. *See United States v. Wilgus*, 638 F.3d 1274, 1279 (10th Cir. 2011).

Under RFRA, the government may not "substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1(a). This general prohibition is not, however, without exception. The government may justify a substantial burden on the free exercise of religion if the challenged law: "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Id.* at § 2000bb-1(b). The initial burden is borne by the party challenging the law. Once that party establishes that the challenged law substantially burdens her free exercise of religion, the burden shifts to the government to justify that burden. The nature of this preliminary injunction proceeding does not alter these burdens. *Gonzales*, 546 U.S. at 429. Thus, I must first consider whether Plaintiffs have demonstrated that the preventive care coverage mandate substantially burdens their free exercise of religion. If so, I must then consider whether the government has demonstrated that the preventive care coverage mandate is the least restrictive means to achieve a compelling interest.

*Substantial Burden of Free Exercise*

Plaintiffs argue that providing contraception coverage violates their sincerely held

11

religious beliefs. Although the government does not challenge the sincerity of the Newlands' religious beliefs, it argues that Plaintiffs have failed to demonstrate a substantial burden on their free exercise of religion. This argument relies upon two key premises. First, the government asserts that the burden of providing insurance coverage is borne by Hercules. Second, the government argues that as a for-profit, secular employer, Hercules cannot engage in an exercise of religion. Accordingly, the argument concludes, the preventive care coverage mandate cannot burden Hercules' free exercise of religion.[9] Plaintiffs counter, arguing that there exists no law forbidding a corporation from operating according to religious principles.

These arguments pose difficult questions of first impression. Can a corporation exercise religion? Should a closely-held subchapter-s corporation owned and operated by a small group of individuals professing adherence to uniform religious beliefs be treated differently than a publicly held corporation owned and operated by a group of stakeholders with diverse religious beliefs? Is it possible to "pierce the veil" and disregard the corporate form in this context? What is the significance of the pass-through taxation applicable to subchapter-s corporations as it pertains to this analysis? These questions merit more deliberate investigation.

Even if, upon further examination, Plaintiffs are able to demonstrate a substantial burden on their free exercise of religion, however, the government may justify its application of the preventive care coverage mandate by demonstrating that application of that mandate to Plaintiffs

---

[9] In the alternative, the government argues that because Plaintiffs routinely contribute to other schemes that violate the religious beliefs alleged here, the preventive care coverage mandate does not substantially burden Plaintiffs' free exercise of religion. This argument requires impermissible line drawing, and I reject it out of hand. *See Thomas v. Review Bd. of Ind. Emp't Sec.*, 450 U.S. 707, 715 (1981).

is the least restrictive means of furthering a compelling interest.

*Compelling Interest*

In order to justify a substantial burden on Plaintiffs' free exercise of religion, the government must show that its application of the preventive carecoverage mandate to Plaintiffs furthers "interests of the highest order." *Hardeman*, 297 F.3d at 1127. It is well-settled that the interest asserted in this case, the promotion of public health, is a compelling government interest. *See Buchwald v. Univ. of N.M. Sch. of Med.*, 159 F.3d 487, 498 (10th Cir. 1998). The government argues that the preventive care coverage mandate, as applied to Plaintiffs and all similarly situated parties, furthers this compelling interest.

Assuming, *arguendo*, that application of the preventive care coverage mandate to Plaintiffs and all similarly situated parties furthers a compelling government interest,[10] that argument does not justify a substantial burden on Plaintiffs' free exercise of religion: "RFRA requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law to the person – the particular claimant whose sincere exercise of religion is being substantially burdened." *Gonzales*, 546 U.S. at 430-31.

I do not mean to suggest that the government may not establish a compelling interest in the uniform application of a particular program. To make such a showing, however, the government must "offer[] evidence that granting the requested religious accommodations would seriously compromise its ability to administer this program." *Id*. at 435. Any such argument is

---

[10] Plaintiffs strenuously challenge whether the preventive care coverage mandate actually furthers the promotion of public health. I need not address that argument to resolve the instant motion, and I decline to do so.

undermined by the existence of numerous exemptions to the preventive care coverage mandate. In promulgating the preventive care coverage mandate, Congress created significant exemptions for small employers and grandfathered health plans.[11] [12]  26 U.S.C. § 4980H(c)(2) (exempting from health care provision requirement employers of less than fifty full-time employees); 42 U.S.C. § 18011 (grandfathering of existing health care plans).  Even Defendants created a regulatory exemption to the contraception mandate.  76 Fed. Reg. 46621, 46626 (Aug. 3, 2011) (exempting certain religious employers from the contraception requirement of the preventive care coverage mandate).

"[A] law cannot be regarded as protecting an interest of the highest order when it leaves appreciable damage to that supposedly vital interest unprohibited." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 547 (1993); *see also United States v. Friday*, 525 F.3d 938, 958 (10th Cir. 2008).  The government has exempted over 190 million health plan

---

[11] The government's attempt to characterize grandfathering as "phased implementation" is unavailing.  As noted above, health plans may retain their grandfathered status indefinitely. Most damaging to the government's alleged compelling interest, even though Congress required grandfathered health plans to comply with certain provisions of the ACA, it specifically exempted grandfathered health plans from complying with the preventive care coverage mandate. *See* 42 U.S.C. § 18011(a)(3-4) (specifying those provisions of the ACA that apply to grandfathered health plans).

[12] The government argues that because these provisions are generally applicable, and not specifically limited to the preventive services coverage regulations, they are not exemptions from the preventive care coverage mandate.  This is a distinction without substance.  By exempting employers from providing health care coverage, these provisions exempt those employers from providing preventative health care coverage to women.  If the government has a compelling interest in ensuring no-cost provision of preventative health coverage to women, that interest is compromised by exceptions allowing employers to avoid providing that coverage – whether broadly or narrowly crafted.

participants and beneficiaries from the preventive care coverage mandate;[13] this massive exemption completely undermines any compelling interest in applying the preventive care coverage mandate to Plaintiffs.[14]

*Least Restrictive Means*

Even if the government were able to establish a compelling interest in applying the preventive care coverage mandate to Plaintiffs, it must also demonstrate that there are no feasible less-restrictive alternatives. *Wilgus*, 638 F.3d at 1289. The government need not tilt at windmills; it need only refute alternatives proposed by Plaintiffs. *Id*.

Plaintiffs propose one alternative, government provision of free birth control, that could be achieved by a variety of methods: creation of a contraception insurance plan with free enrollment, direct compensation of contraception and sterilization providers, creation of a tax credit or deduction for contraceptive purchases, or imposition of a mandate on the contraception manufacturing industry to give its items away for free. Defendants argue Plaintiffs' "misunderstand the nature of the 'least restrictive means' inquiry." Brief in Opposition (doc. 26) at 43. According to Defendants, this inquiry should be limited to whether Plaintiffs and other similarly situated parties could be exempted without damaging Defendants' compelling interest.

---

[13] Even if, as is estimated under the government's high-end estimate, 69% of health plans lose their grandfathered status by the end of 2013, millions health plan participants and beneficiaries will continue to be exempted from the preventive care coverage mandate. *See* 75 Fed. Reg. 34538, 34553.

[14] To the extent the government argues creating an exemption for Plaintiffs threatens to undermine the preventive care coverage mandate, that argument is inconsistent with RFRA and irrelevant in this context. *See Gonzales*, 546 U.S. at 436 (rejecting "slippery slope" argument as inconsistent with RFRA).

It is, however, not Plaintiffs but Defendants who misunderstand the least restrictive means inquiry. Defendants need not refute every conceivable alternative, but they "must refute the alternative schemes offered by the challenger."[15] *Wilgus*, 638 F.3d at 1289.

Despite their categorical argument, Defendants attempt to refute Plaintiffs' proposed alternative. First, Defendants argue that because Plaintiffs' alternative "would impose considerable new costs and other burdens on the Government and are otherwise impractical," they should be rejected as not "feasible" or "plausible." Brief in Opposition (doc. 26) at 44. Although a showing of impracticality is sufficient to refute the adequacy of a proposed alternative, Defendants have failed to make such a showing in this case. As Plaintiffs note, "the government already provides free contraception to women." Reply Brief in Support (doc. 27) at 38.

Defendants also argue Plaintiffs' alternative would not adequately advance the government's compelling interests. They acknowledge that Plaintiffs' alternative would achieve the purpose of providing contraceptive services to women with no cost sharing, but argue that Plaintiffs' alternative will not "ensur[e] that women will face minimal logistical and administrative obstacles to receiving coverage of their care." Brief in Opposition (doc. 26) at 45. Although Plaintiffs argue that this amounts to a redefinition of Defendants' compelling interest,

---

[15] Furthermore, both parties impermissibly expand the scope of this determination. As noted above, my inquiry is limited to the parties before me; I do not consider all other "similarly situated parties." To the extent Plaintiffs' alternative would apply to other parties, it is overinclusive. Because the parties frame this discussion, however, I analyze the alternative as presented by Plaintiffs and responded to by Defendants.

it is instead a logical corollary thereto.[16] Nonetheless, Defendants have failed to adduce facts establishing that government provision of contraception services will necessarily entail logistical and administrative obstacles defeating the ultimate purpose of providing no-cost preventive health care coverage to women. Once again, the current existence of analogous programs heavily weighs against such an argument.

Defendants bear the burden of demonstrating that refusing to exempt Plaintiffs from the preventive care coverage mandate is the least restrictive means of furthering their compelling interest. Given the existence of government programs similar to Plaintiffs' proposed alternative, the government has failed to meet this burden.

## Conclusion

The balance of the equities tip strongly in favor of injunctive relief in this case. Because this case presents "questions going to the merits . . . so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation," I find it appropriate to enjoin the implementation of the preventive care coverage mandate as applied to Plaintiffs. Accordingly,

Defendants, their agents, officers, and employees, and their requirements that Plaintiffs provide FDA-approved contraceptive methods, sterilization procedures, and patient education and counseling for women with reproductive capacity, are ENJOINED from any application or enforcement thereof against Plaintiffs, including the substantive requirement imposed in 42

---

[16] To be clear, I do not believe Defendants have sufficiently demonstrated a compelling interest in enforcing the preventive care coveragemandate against Plaintiffs. For purposes of my analysis under "least restrictive means" prong of RFRA, however, I assume the existence of such an interest.

U.S.C. § 300gg-13(a)(4), the application of the penalties found in 26 U.S.C. §§ 4980D & 4980H and 29 U.S.C. § 1132, and any determination that the requirements are applicable to Plaintiffs.

Pursuant to Fed. R. Civ. P. Rule 65(c), Plaintiffs shall post a $100.00 bond as security for any costs and damages that may be sustained by Defendants in the event they have been wrongfully enjoined or restrained.

Such injunction shall expire three months from entry of an order on the merits of Plaintiffs' challenge. In order to expedite the resolution of this case, the parties shall file a Joint Case Management Plan on or before August 27, 2012.

And, finally, I take this opportunity to emphasize the *ad hoc* nature of this injunction. The government's arguments are largely premised upon a fear that granting an exemption to Plaintiffs will necessarily require granting similar injunction to all other for-profit, secular corporations voicing religious objections to the preventive care coverage mandate. This injunction is, however, premised upon the alleged substantial burden on Plaintiffs' free exercise of religion – not to any alleged burden on any other party's free exercise of religion. It does not enjoin enforcement of the preventive care coverage mandate against any other party.

Dated: July 27, 2012                           BY THE COURT:

                                               /s/ **John L. Kane**
                                               Senior U.S. District Court Judge